HOWARD BECKWITH

*vs.*

FRANK ROSSI AND THOMAS TEAGUE
Intervener by Application

Somerset.   Opinion, November 7, 1961.

*Eames & Eames,* for plaintiff.

*Robert A. Marden,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SIDDALL, JJ.
SULLIVAN, J. and DUBORD, J., did not sit.

SIDDALL, J.   This is an appeal from a decree granting defendant Rossi's motion for a summary judgment and denying plaintiff's motion for such a judgment.

Sarah T. Cole, in 1945, conveyed to Ralph A. Jewell certain property located in Fairfield, Maine.   The controversy in the case involves the interpretation of the following provision in that deed, to wit, "Also reserving the gravel near the northerly line of said lot but with the understanding that the purchaser of the lot may take gravel therefrom for use on the farm which he owns on the westerly side of said road which was formerly a part of this farm."   The property came from Ralph A. Jewell by various mesne conveyances to the plaintiff, subject to the above described reservation.   Sarah T. Cole conveyed to Thomas M. Teague the gravel reserved by her in her deed to Jewell.   The defendant Frank Rossi entered upon said property by permission and license given him by Teague to take the gravel. Rossi bored seven holes in the ground to test for the presence of gravel, and after finding no gravel, the holes were filled by use of a bulldozer.

Under the old rules of court then in effect the plaintiff brought suit in trespass q.c.f. against the defendant Rossi, claiming that the topsoil of his property had been damaged by Rossi's operations.   Subsequent proceedings were conducted under the new rules.   Teague intervened as a defendant.   Teague in his answer set up a counterclaim requesting that plaintiff be enjoined from certain acts with reference to the reserved gravel.

The action of the court on the motions for summary judgment was taken under the provisions of Rule 56 of the Maine Rules of Civil Procedure.   This rule provides that

summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.   Rule 56 (c).

The points of appeal relied upon by the plaintiff are summarized as follows:

1.   That the court erred in ruling that Sarah Cole had an assignable interest in the gravel.

2.   That the court erred in ruling that Sarah Cole had a greater interest than a life estate in the said gravel.

3.   That the court erred in ruling that the defendant had the right to bore holes and close the holes so bored by the method used.

The use of the words "reserving the gravel" used in the deed from Sarah Cole to Ralph Jewell created in Sarah Cole what is technically designated as a "profit a prendre."   A profit a prendre is the right to take from the land of another a part of the soil, or something which is a product of the soil.   Examples of profits a prendre are the right to take soil, gravel, minerals and the like from another's land.   See *Engel* v. *Ayer*, 85 Me. 448, 455, 27 A. 352.   The right may be appurtenant to a dominant estate, in the nature of an easement proper, or it may be a right in gross. In the instant case the right to the gravel does not appear to be appurtenant to other lands and therefore is a right in gross.   A right to a profit a prendre in gross in the lands of another is treated as an estate or interest in the land itself.   Such interest is assignable and may be for life or inheritance.   *Engel* v. *Ayer, supra.*

The ruling of the court that Sarah Cole had an assignable interest in the gravel was correct.

The plaintiff also claims, in the points of appeal filed by him, that the court erred in ruling that Sarah Cole had a greater interest than a life estate in the gravel. There is no suggestion in the record that Sarah Cole was not alive at the time of the acts of the defendant upon which the complaint was based. Furthermore, the plaintiff did not argue this point of appeal in his brief filed with this court. Therefore, a discussion of this claim is unnecessary.

The plaintiff makes the further claim that the court erred in ruling that the defendant had the right to bore test holes and to close such holes by the method used therefor. This claim necessitates; (1) a discussion of the rights and obligations of the owner of a right to profits a prendre and those of the owner of the remaining soil; (2) whether, under common law pleadings, a suit in trespass q.c.f. may be properly brought for damages arising out of the misuse of such right; (3) whether the issue of misuse of such right was eliminated in the pre-trial proceedings.

The record shows that no gravel was found in the area tested. We are therefore not concerned with the question of whether gravel was properly taken from the property. We are, however, concerned with the right of the owner of a right to profits a prendre to make tests for the presence of gravel, and with his obligations to the owner of the soil during and after such operations.

"The right of a profit a prendre involves the right to do anything upon the land in which the right exists that is *reasonably necessary for the proper exercise of the right."* Thompson on Real Property, Vol. 1, Sec. 225. (Emphasis supplied.)

"A profit a prendre involves a right to do such things on the land in which the right exists as are *reasonably necessary for the exercise of the right."* Tiffany Real Property, 3d Edition, Sec. 839. (Emphasis supplied.)

The rights and obligations of the owners of the right to profits a prendre and of the owners of the remaining soil are not unlike those of the owners of the dominant and servient estates in the use and enjoyment of easements proper.

One having an easement in another's land must exercise his right in a *reasonable* manner. *Kaler* v. *Beaman, et al.,* 49 Me. 207, 208.

"The owner of the easement has all rights incident or necessary to its proper enjoyment but nothing more." *Great Hill Lake* v. *Caswell,* 126 Conn. 364, 11 A. (2nd) 396, 397.

> "It is an established principle that the unrestricted grant of an easement gives the grantee all such rights as are incidental or necessary to the reasonable and proper enjoyment of the easement. A grant or reservation of an easement in general terms is limited to a use which is reasonably necessary and convenient and as little burdensome to the servient estate as possible for the use contemplated. An unlimited conveyance of an easement is in law a grant of unlimited reasonable use."
>
>     \*    \*    \*    \*    \*
>
> "The reasonable use and enjoyment of an easement is to be determined in the light of the situation of the property and the surrounding circumstances. No definite rule can be stated, however, as to what may be considered a proper and reasonable use as distinguished from an unreasonable and improper use. The question is usually one of fact." 17A Am. Jur., Easements, p. 720, 721.

In the instant case the reservation of the right to profits a prendre was set forth in general terms, and the rights and obligations of the respective parties were not specifically set forth in the instrument of conveyance. In such a situation, the right of the defendant to make reasonable

tests for the presence of gravel was incidental to the proper enjoyment of his rights to profits a prendre. Having found no gravel, it became the duty of the defendant to restore the soil in a reasonably proper manner.

Generally, the owner of an easement who exceeds his rights either in the manner or extent of its use is guilty of a trespass. 28 C.J.S., Easements, p. 785, 17A Am. Jur., Easements, p. 719-720. We see no reason why the same rule should not apply to the owner of a right to profits a prendre.

The case of *Kaler* v. *Beaman, supra,* involved the wrongful use of certain easements of way and right to the use of water. The suit was for trespass q.c.f. brought by the owner of the servient tenement. In finding for the plaintiff, the court said:

> "Merrill, by his deed, had the right to draw the specified quantity of water from Kaler's flume, at such point as would best convene himself. But he must exercise that right in a reasonable manner. Though he was authorized to select from what part of the flume he would draw the water to which he was entitled, he would not, in the exercise of that right, by wantonness or negligence, so conduct as unnecessarily to injure the plaintiff, in the exercise of his remaining rights.

> The defendants also have, by the terms of Merrill's deed, a right to the use of one half of the surplus water, over and above what was necessary to carry Kaler's plaster mill and grist mill, and Merrill's thirty marble saws or six horse power. If the defendants in any manner exceeded the above limitations of their rights they would thereby become trespassers, and become liable for so much damage, as they might occasion to the plaintiffs by such excess."

> \* \* \* \* \*

> "The evidence very clearly shows that the defendants have exceeded their rights, both in the

manner in which they have occupied and used this road by incumbering it with lumber, and also, in the quantity of water they have drawn from the plaintiff's flume, without reference to the manner in which the right to draw water has been exercised."

We quote from the opinion in the case of *Appleton* v. *Fullerton, et al.*, 1 Gray 186, 192, as follows:

"The plaintiff then was the owner of the soil, in possession, and in a condition to maintain trespass; and the question is, whether the acts done by the defendants were justifiable under their reserved rights. The defendants clearly had a right of entry for certain specified purposes, so that the mere entry of the close was not a trespass; and therefore the real question is, whether the defendants entered upon and used the land for purposes not warranted by the reservation; if so, the action lies."

It therefore appears that the question of whether there was a misuse of the defendant Rossi's right to profits a prendre was one of the issues raised in plaintiff's writ.

We must now determine whether or not this particular issue was eliminated by the stipulations contained in the pre-trial order entered under the provisions of Rule 16, M.R.C.P. Under Rule 16 one of the matters for consideration in pre-trial conferences is the simplification of issues. Courts have often expressed the view that one of the chief purposes of pre-trial procedure is to formulate the issues to be litigated at the trial. Rule 16 provides that the order shall recite the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. Such order when entered controls the subsequent course of the action, unless

modified at the trial to prevent manifest injustice. The reason for the requirement that the order controls the subsequent course of the trial is apparent. If the rule were not so, the order would be meaningless, and confusion would often take place at the time of trial. This court should not, of course, be called upon to consider on appeal an issue disposed of by admissions or agreements included in the pre-trial order. The order did not specifically state that all of the issues raised by the respective parties were set forth therein. Obviously, however, the order was designed to define the issues relied upon by each party. The order makes it clear that the plaintiff contended that the reservation of rights in the deed from Sarah Cole to Ralph A. Jewell was not assignable. It is likewise clear that the defendant claimed by assignment those rights reserved by Sarah Cole. The defendant also set up a claim to *res judicata*. The order does not specifically recite that the plaintiff claimed that the misuse of the defendant's right to profits a prendre was an issue. It does, however, contain the following statement: "As related to the question of damages, the plaintiff claims when the bulldozing was done in an area of two acres, a certain amount of the topsoil was disturbed and moved to other places, requiring the plaintiff to re-seed and make changes in the land in order to enable him to use it for a hayfield." Technically, this recitation appears to relate solely to damages, although there may be an inference therein that the damages resulted from the misuse of defendant's right.

As stated above, there was an obvious endeavor on the part of the court to define in his order the issues of the case. The plaintiff, if he had intended to rely upon the misuse of defendant's right as an issue, should have clearly indicated his intention to do so. We are, however, mindful of the fact that the pre-trial conference took place within a few weeks after the Maine Rules of Civil Procedure became effective. At that time pre-trial procedure as pro-

vided by the rules was an innovation in trial practice in our state courts. Members of our bar had not had an opportunity to acquaint themselves fully with the importance and effect of pre-trial conferences and orders. We also note that the court in his order for summary judgment indicates that the plaintiff, in the summary judgment proceedings, was not relying solely on his claim that the reserved rights were not assignable. We quote from the court's opinion and order as follows:

"The defendant (sic) claims:

    (1)    Sarah Cole retained an interest in the gravel which was personal to her and not assignable.

    (2)    Even if her interest in the gravel did pass to Thomas Teague, the boring of the seven holes and bulldozing caused damage to plaintiff for which compensation should be had."

Under these circumstances, especially where the controversy involves the granting of a motion for summary judgment, we feel that a liberal construction should be given to the terms of the pre-trial order. Therefore, we rule that the issue of a misuse of the right to profits a prendre was not lost to the plaintiff by the terms of the pre-trial order. The result in this case, however, serves to emphasize the desirability of a clear and definitive statement in the pre-trial order of the issues remaining to be tried. Such, we believe, has now become common practice in the superior court.

The pre-trial order recites that the defendant contends that plaintiff's action is barred by reason of a referee's report, accepted at the September Term, 1956, of the Superior Court for Somerset County. It appears that this report was made in an action brought by the defendant Teague against the plaintiff and his wife. The court below, in his opinion and order, did not consider this claim.

In view of the fact that the defendant did not argue this contention in his brief filed in this court, we do not deem it necessary to discuss it here. We note, however, that the issue of the misuse of the right to profits a prendre was not an issue in the hearing before the referee.

A summary judgment may be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Rule 56 (c) M.R.C.P. In the instant case, whether the tests were conducted in a reasonable manner, and whether the soil was restored in a reasonably proper manner were, on the record in the case, questions of fact and not of law. Issues of material facts were presented by the pleadings and record, and a summary judgment for either party was not in order.

The court's denial of plaintiff's motion for a summary judgment was proper. The court erred in granting a similar motion by the defendant.

The entry will be

> *Appeal from the denial of plaintiff's motion for summary judgment denied.*
>
> *Appeal from the granting of defendant's motion for summary judgment sustained.*