Cecilia A. ATKINS

v.

Edward L. ATKINS and Ralph W. Atkins.

Supreme Judicial Court of Maine.

Aug. 18, 1977.

Daviau & Daviau by Robert J. Daviau, Waterville, for plaintiff.

Marden, Dubord, Bernier & Chandler by Albert L. Bernier, Waterville, for defendants.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

DELAHANTY, Justice.

Plaintiff Cecilia Atkins appeals from an order of summary judgment in favor of her ex-husband, defendant Edward Atkins (Edward), and her son, defendant Ralph Atkins (Ralph). We sustain the appeal.

Plaintiff obtained a divorce from her husband on August 27, 1969. The next day, August 28, 1969, she filed a complaint against Edward and Ralph, alleging that they had conspired to place a certain parcel of real estate, and the Crescent Hotel situated thereon, beyond her reach. The property had been purchased in 1966, at a time when plaintiff and Edward were estranged and separated. Although title was placed in Ralph's name, it was Edward who supplied the $10,000 for the down payment. Plaintiff claims that the true and equitable owner of the property is Edward, and that she is therefore entitled to a portion of that property by virtue of the divorce.[1] She

asks that Ralph be charged as a trustee of the property for her benefit or, in the alternative, that a money judgment be rendered against Edward. On December 17, 1969 the property was taken by Urban Renewal and the $74,000 compensation was made payable to Ralph.

Plaintiff filed a pre-trial memorandum on April 22, 1970. The case then lingered on the calendar for several years. Pre-trial conference was finally held on January 13, 1976. The presiding Justice subsequently issued a pre-trial order specifying the factual issues involved, but defendants filed a formal objection to the manner in which he had postured the issues.

Later, on June 23, 1976, defendants moved for summary judgment. Following a hearing, their motion was granted by a decision dated July 31, 1976. The issue which we address concerns the propriety of this granting of the motion from both procedural and substantive points of view.

■ Plaintiff first argues that summary judgment was procedurally inappropriate since defendants' motion was filed six years after the commencement of the action. M.R.Civ.P. 56 provides that a motion for summary judgment may be filed "at any time after the expiration of 20 days from the commencement of the action . . . but within such time as not to delay the trial." Plaintiff does not contend that the motion, or the hearing on it, in any way delayed trial. On these facts, a six-year delay would not preclude summary judgment.

Plaintiff next argues that summary judgment was procedurally improper since its granting perforce overrules the previous pre-trial order which had specified that genuine factual issues were involved. She contends that summary judgment is never appropriate in such a case. We disagree.

1. The relevant statute at the time of the divorce was 19 M.R.S.A. § 721, which provided in pertinent part:

When a divorce is decreed to the wife for the fault of the husband for any other cause [other than impotency] she shall be entitled to ⅓ in common and undivided of all his real estate, except wild lands, which shall descend to her as if he were dead; . . . ..

■ The purpose of a pre-trial order is to make specific the legal theories on which each party is proceeding and to crystallize and formulate the issues to be litigated at the trial. *Beckwith v. Rossi*, 157 Me. 532, 175 A.2d 732 (1961). If the order did not control the ensuing proceedings, it would be rendered meaningless. However, this does not mean that there must be unswerving and rigid adherence to every provision; the pre-trial order was not intended to become "hoops of steel to bind the parties to frozen issues." *Case v. Abrams*, 352 F.2d 193, 195 (10th Cir. 1965). Indeed, M.R.Civ.P. 16(c) provides that the order "controls the subsequent course of the action, *unless modified at the trial to prevent manifest injustice*" (emphasis added), thus sanctioning a certain degree of flexibility and adaptability to changing circumstances.

■ Not only may the pre-trial order be modified, but its posturing of the factual issues may, in certain situations, be disregarded even to the extent of permitting a later granting of summary judgment, a procedure utilized exclusively when *no* genuine fact issues whatsoever exist. 6 J. Moore, Federal Practice § 56.02 (2d ed. 1974).[2] We concur with the opinion of the Second Circuit in *Irving Trust Co. v. United States*, 221 F.2d 303, 305 (2d Cir. 1955) that

> [u]pon a proper showing that there is no genuine issue to be tried, a judge may grant a motion for summary judgment wholly irrespective of the terms of a pre-trial order specifying a number of issues which remained after the discussion at the Pretrial Conference had eliminated others.

Plaintiff's contention that the pre-trial order must, in every instance, control is therefore unfounded. Certainly there are cases in which it would be manifestly unjust to allow it to do so. The case before us, however, is not one of them. We have reviewed the pre-trial order[3] and, for the reasons delineated below, we agree with its posturing of the factual issues.

■ In granting defendants' motion for summary judgment, the Justice below stated:

> The Plaintiff asserts that when, prior to her divorce from him, the Defendant, Edward L. Atkins furnished $10,000 for the down payment for the purchase of certain real estate purchased in the name of their son, the Defendant, Ralph W. Atkins, it was a fraud upon the Plaintiff. The sum advanced for that down payment was repaid to the Defendant, Edward L. Atkins, when the real estate was taken from the son by eminent domain in 1969. At no time did the Defendant, Edward L. Atkins, ever have title to this real estate. *A husband may dispose of his personal estate absolutely without the concurrence of his wife, exonerated from all claim by her. Wright v. Holmes*, 100 Me. 508, 514, 62 A. 507 (1905). See also *Kirkpatrick v. Clark*, 132 Ill. 342, 24 N.E. 71, 72 (1890). (emphasis added).

We are troubled by the presiding Justice's decision and his reliance on *Wright* since, in reciting the holding of that case, he omitted an important exception contained therein. The complete sentence states that the husband

> may by gift dispose of his personal property absolutely, without the concurrence and against the will of his wife, exonerated from all claim by her, *provided the transaction is not merely colorable*, and is unattended by facts indicative of some other fraud upon her than that arising from his absolute transfer, to prevent her having an interest therein after his death. *Wright v. Holmes, supra* at 514, 62 A. at 510 (emphasis added).

---

**2.** We find federal authorities highly persuasive inasmuch as the federal rule on pre-trial orders is virtually identical to ours, the only significant difference being that the federal rule speaks of modification to prevent "injustice" rather than "manifest injustice."

**3.** Defendants' attorney promptly filed a formal objection to the presiding Justice's formulation of the issues in the pre-trial order. Consequently, we may review the order and it does not necessarily control the appeal. *See generally* 6 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1526 (1971).

Whether the transaction here (i.e. the transfer by Edward of the $10,000) was "merely colorable" is a question of fact for the jury, and it is actually quite similar to the "factual issue" posed by the Justice who issued the pre-trial order. Specifically he stated:

The issue in this case is whether or not Edward Atkins had an equitable interest in the Crescent Hotel and the land on which it was situated at the time of the divorce, which equitable interest resulted from a fraudulent scheme to take title in the name of his son, Ralph W. Atkins, with the purchase price of the property being furnished by Defendant, Edward L. Atkins. The factual issues are whether or not Edward L. Atkins was said equitable owner and Plaintiff contends that he is still virtually the owner of the property, the bare, naked, legal title of which is held by Ralph W. Atkins, and that the sole control of the property is in the beneficial owner.

We do not think that it can be said, as a matter of law, that Ralph owned the property. In addition to Edward's having furnished the down payment, the record indicates that the property was listed as depreciable property on Edward's income tax return, and that taxes and insurance on the property were paid by Atkins Printing, Inc., a company apparently owned by Edward since he stated under oath that it was he who paid the taxes on the property. Whether these facts are sufficient to warrant a finding that Edward was, in fact, the beneficial owner was a question for the jury.[4]

We recently noted that "summary judgment is an extreme remedy which should be cautiously invoked." *Cardinali v. Planning Board*, Me., 373 A.2d 251, 255 (1977). The burden was on defendants to show their right to judgment as a matter of law. *Akerley v. Lammi*, Me., 217 A.2d 396 (1966). We do not believe that defendants have satisfied their burden here.

The entry must be

Appeal sustained.

POMEROY, J., did not sit.

All Justices concurring.

---

4. Defendants make much of the fact that plaintiff failed to submit a counteraffidavit in opposition to their motion for summary judgment. In *Steeves v. Irwin*, Me., 233 A.2d 126 (1967) we said that when a motion for summary judgment is made with proper supportive affidavit, the adverse party must respond with a proper opposing affidavit; otherwise, "summary judgment, *if appropriate*, shall be entered against him." *Id.* at 129 (emphasis added). Here, the pleadings raise sufficient issues of fact to warrant jury consideration and hence summary judgment is not "appropriate." Filing of a counteraffidavit is not mandatory in such a case.